# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-02178-RGK-KS | Date | June 07, 2019 |
|---|---|---|---|
| Title | *Bicent Cal. Malburg LLC v. City of Vernon* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiffs' Motion to Remand (DE 31)

## I. INTRODUCTION

On March 14, 2019, Bicent (California) Malberg LLC and Colorado Energy Management, LLC (collectively, "Plaintiffs") filed the instant action against City of Vernon ("Vernon") and Kelly Nguyen (collectively, "Defendants") in state court. Plaintiffs assert seven causes of action, which includes breach of contract, frustration of purpose, breach of covenant of good faith and fair dealing, negligent misrepresentation, and declaratory and injunctive relief. On March 22, 2019, Defendants removed the action to federal court on the basis of federal question jurisdiction.

Defendants have since filed a Motion to Dismiss and a Motion to Compel Arbitration, which are currently pending.

Presently before the Court is Plaintiffs' Motion to Remand. For the following reasons, the Court **GRANTS** the Motion and **remands** this action to state court.

## II. FACTUAL BACKGROUND[1]

In the early 2000s, Vernon constructed a power plant, the Malburg Generating Station ("MGS"), to supply electricity throughout the city. MGS is interconnected with Vernon's power distribution system via a city-owned and operated interconnection system. The interconnected system is connected to and located adjacent to and underneath MGS.

---

[1] The facts outlined here are based on Plaintiffs' allegations in the Complaint. Because removal was based on Plaintiffs' second and sixth claims for relief, only facts relevant to those claims are discussed.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-02178-RGK-KS | Date | June 07, 2019 |
|---|---|---|---|
| Title | *Bicent Cal. Malburg LLC v. City of Vernon* | | |

In 2008, Plaintiffs purchased MGS from Vernon. As part of the sale, Plaintiffs and Vernon executed two contracts that govern the parties' relationship; the Interconnection and Transmission Services Agreement ("ITSA") and the Power Purchase Tolling Agreement ("PPTA"). After the sale, MGS remained—and still remains—connected to Vernon's interconnected and distribution systems owned by Vernon.

Under the ITSA, Vernon agreed, in relevant part, to operate and maintain safe and reliable interconnection and distribution systems. Vernon also agreed to maintain "protection of its facilities consistent with Good Utility Practice." (Compl. ¶ 38, ECF No. 1-1.)

The PPTA sets forth the terms by which Plaintiffs supply electricity to Vernon and how Vernon pays Plaintiffs for electricity. Under the PPTA, Plaintiffs agreed to supply electricity exclusively to Vernon. In return, Vernon agreed to make monthly payments for exclusive access, along with payments for electricity actually delivered. The PPTA is "governed by and construed, enforced and performed in accordance with the laws of the state of California." (Compl. Ex. 2, § 20.5, ECF No. 1-1.)

The PPTA also designates Vernon as MGS's Scheduling Coordinator with the California Independent Systems Operator ("CAISO"). As the Scheduling Coordinator, Vernon is required to, among other things, "submit all required notices and updates regarding each Generating Unit's status to CAISO, including outage reports, and shall perform all other obligations required of a Scheduling Coordinator, pursuant to the CAISO Tariff."[2] (Compl. ¶ 47.) Under the PPTA, Vernon must communicate MGS's availability and Vernon's requests for dispatching MGS's energy production to CAISO, and then Vernon must communicate CAISO's real-time instructions regarding MGS's power output to Plaintiffs.

In their second claim, Plaintiffs allege that Vernon breached the PPTA by failing to comply with its obligations as the Scheduling Coordinator. Specifically, Plaintiffs assert that Vernon ignored or violated dispatch instructions from CAISO; failed to provide Plaintiffs with CAISO dispatch instructions; failed to monitor the CAISO dispatch system; failed to notify CAISO of a November 15, 2018 scheduled outage and capacity test demanded by Vernon; and delayed notifying CAISO of a December 2018 scheduled outage to delay repairs to the Facility. (Compl. ¶ 110.)

In their sixth claim, Plaintiffs allege that Defendants had a duty to transmit dispatch notices as required by the CAISO Tariff and Good Utility Practice. (Compl. ¶ 131.) Plaintiffs further allege that on

---

[2] The CAISO Tariff is a regulation that, in relevant part, "governs how utilities are to be dispatched. Scheduling utility operations in accordance with the CAISO Tariff is essential to ensuring that CAISO can track utility usage in real time and thereby draw on underutilized resources when necessary to stabilize the grid." (Compl. ¶ 47, n.3.)

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-02178-RGK-KS | Date | June 07, 2019 |
|---|---|---|---|
| Title | *Bicent Cal. Malburg LLC v. City of Vernon* | | |

various occasions, Defendants failed to notify Plaintiffs of dispatch requests from CAISO. (Compl. ¶ 132.) Plaintiffs assert that Defendants' failure to notify Plaintiffs of instructions from CAISO to increase dispatch prevented Plaintiffs from increasing dispatch levels and receiving payments they would have received had dispatch levels been increased. (Compl. ¶ 133.)

### III.     JUDICIAL STANDARD

A defendant may remove a case from state court when the federal court has original jurisdiction. 28 U.S.C. § 1441(g). Original jurisdiction exists either when a claim "aris[es] under the Constitution, laws, or treaties of the United States" or when the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331–32. Federal courts must "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The strong presumption against removal jurisdiction places the burden on the defendant to show by a preponderance of evidence that removal is proper. *Id.* at 566.

### IV.     DISCUSSION

Defendants premised removal on the existence of federal jurisdiction under 28 U.S.C. § 1331 as to Plaintiffs' second and sixth claims and under 28 U.S.C. § 1367—supplemental jurisdiction—as to the remaining claims. The Court addresses each in turn.

####     A.     Federal Question

Plaintiffs' second claim is for breach of contract, and their sixth claim is for negligent misrepresentation; both of which are state law claims. These state-law claims unquestionably incorporate by reference the CAISO Tariff, which the Ninth Circuit has found to be the "equivalent of a federal regulation." *Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004). Defendants therefore contend that these state-law claims necessarily raise federal issues that vest the Court with federal question jurisdiction.

In determining whether federal jurisdiction attaches to a state law claim that is predicated on violations of federal law, a court must examine whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Federal question jurisdiction does not exist merely where a court may have to interpret federal laws or regulations; it exists only where "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9–10 (1983).

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-02178-RGK-KS | Date | June 07, 2019 |
|---|---|---|---|
| Title | *Bicent Cal. Malburg LLC v. City of Vernon* | | |

Here, the second and sixth claims are derived from the PPTA and are based on Defendants' obligations arising under the PPTA. For instance, in the second claim, Plaintiffs' allege that "Vernon has breached the PPTA by failing to honor its Scheduling Coordinator obligations . . . ." (Compl. ¶ 110.) Plaintiffs further allege that, in its duty as Scheduling Coordinator under the PPTA, Vernon must "comply with the CAISO Tariff." (Compl. ¶ 109.) In the sixth claim, Plaintiffs' allege that "Defendants had a duty to exercise care in the transmission of dispatch notices in accordance with the CAISO Tariff and Good Utility Practice." (Compl. ¶ 131.) Based on the allegations throughout the Complaint, the duty at issue in the sixth claim stems from Defendants' role as MGS's Scheduling Coordinator under the PPTA.

These allegations therefore assert that Defendants violated duties under the PPTA. While these alleged violations incorporate CAISO and the CAISO Tariff, they do not raise or turn on a substantial issue of federal law. The parties agreed that the PPTA, which is the contract that governs the relationship between the parties, would be "governed by and construed, enforced and performed in accordance with the laws of the state of California." (Compl. Ex. 2, § 20.5, ECF No. 1-1.) Therefore, the interpretation of any CAISO or CAISO Tariff provision that may be necessary to resolve Plaintiffs' second or sixth claim does not raise a substantial issue of federal law. *See Pac. Gas & Elec. v. Ariz. Elec. Power Coop., Inc.*, 479 F. Supp. 2d 1113, 1123 (E.D. Cal. 2007) (hereinafter referred to as, "*Pacific Gas*") ("Given that the very language at issue . . . is to be expressly construed in accord with California law rather than federal law, the Court finds the federal interests to be considerably muted.").

Nevertheless, Defendants contend that the Ninth Circuit's opinion in *Lockyer v. Dynegy* requires a different result. The Court disagrees.

In *Dynegy*, the Ninth Circuit concluded that the federal court had federal question jurisdiction over a state-law unfair competition claim—California Business & Professions Code § 17200, *et seq.*— that was based on two federal tariffs similar to the one at issue in this action. *See Dynegy*, 375 F.3d at 841–43 (finding that the lawsuit "turn[ed], entirely, upon the defendant's compliance with a federal regulation"). Unlike *Dynegy*, however, the state-law claims at issue here are breach of contract and negligent misrepresentation. As the district court in *Pacific Gas* explained, a claim under California's unfair competition statute is distinct from a claim "seeking to enforce a private contract between private parties which will afford relief only if the contract terms . . . are found to have been breached." 479 F. Supp. 2d at 1125. Given the nature of an unfair competition claim, "an essential element of the *Dynegy* plaintiffs' claim was, necessarily, a violation of the federal tariffs themselves. Absent a violation, no state law liability could have survived." *Id*. As explained above, such is not the case here. Instead, resolution of Plaintiffs' second and sixth claims will ultimately turn on the contract language and duties set out in the PPTA, interpreted according to California law.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-02178-RGK-KS | Date | June 07, 2019 |
|---|---|---|---|
| Title | *Bicent Cal. Malburg LLC v. City of Vernon* | | |

Accordingly, the Court finds that these state-law claims do not raise a substantial issue of federal law to support the exercise of federal question jurisdiction. The Court therefore finds that it lacks original jurisdiction over Plaintiffs' second and sixth claims for relief.

**B.  Supplemental Jurisdiction**

Because the Court finds that it lacks original jurisdiction over the second and sixth claims, the Court cannot exercise supplemental jurisdiction over the other claims. *See* 28 U.S.C. § 1367.

**C.  Plaintiffs' Request for Attorneys' Fees**

Plaintiffs argue that they are entitled to an award of attorneys' fees incurred as a result of bringing their Motion. Plaintiffs contend that Vernon lacked an objectively reasonable basis for removal because Vernon was one of the defendants in *Pacific Gas*, where the district court dismissed a similar breach of contract action for lack of subject matter jurisdiction. In essence, Plaintiffs suggest that they are entitled to fees because Defendants argued a legal position that directly contradicts an argument they benefitted from in *Pacific Gas*. The Court disagrees.

"[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). Because no binding precedent directly foreclosed on Defendants' basis for removal, Defendants had an objectively reasonable basis to believe that the Court had original jurisdiction over the action.

Accordingly, Plaintiffs are not entitled to an award of attorneys' fees.

**V.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand. The Court hereby **REMANDS** the case to state court. Defendants' Motion to Dismiss (DE 15) and Motion to Compel Arbitration (DE 16) are therefore moot.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer